J-A22016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALEC JOSEPH HENRY | |
| Appellant | No. 2223 MDA 2015 |

Appeal from the Judgment of Sentence November 24, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0003175-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                **FILED NOVEMBER 01, 2016**

Appellant, Alec Joseph Henry, appeals from the judgment of sentence entered after he was convicted of driving under the influence of alcohol. Henry contends that the trial court erred in concluding that the arresting officer had reasonable suspicion when he effectuated an investigatory detention. After careful review, we agree with Henry and therefore reverse the suppression order and vacate the judgment of sentence.

The essential facts of this case are not disputed. Henry and a female friend were parked in a restaurant's parking lot. The arresting officer was driving through the parking lot when he noticed Henry and his friend switch seats, such that Henry was now in the driver's seat.

The officer testified that he found this behavior to be suspicious, and thus drove by the parked car slowly enough to peer inside Henry's vehicle.

He saw the top half of a red, white, and blue can sitting in the center console cup holder. For reasons the officer could not articulate, he believed it to be a beer can, although he could not see if the can was open.

The officer did not approach the parked car to interact with Henry and gain more information. Instead, the officer stopped by the exit of the parking lot, and stopped Henry as he attempted to drive his vehicle away. Henry was subsequently found guilty of driving under the influence of alcohol and this timely appeal followed.

On appeal, Henry argues that the trial court erred in denying his pre-trial motion to suppress evidence gained from the stop of his vehicle. Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to … plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa. Super. 2012) (citations omitted). As noted previously, the essential facts of the stop are not in dispute. We therefore turn to the trial court's legal conclusions arising from the testimony presented at the suppression hearing.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *See Commonwealth v. Carter*, 105 A.3d 765, 768 (Pa. Super. 2014) (*en banc*), *appeal denied*, 117 A.3d 295 (Pa. 2015). "To secure the right of citizens to be free from ... [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000) (citation omitted). Our Supreme Court has defined three levels of interaction between citizens and police officers: (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention. *See Commonwealth v. Fuller*, 940 A.2d 476, 478 (Pa. Super. 2007).

A mere encounter between a police officer and a citizen does not need to be supported by any level of suspicion and "carr[ies] no official compulsion on the part of the citizen to stop or respond." *Id*., at 479 (citation omitted). There is no constitutional provision that prohibits police

officers from approaching a citizen in public to make inquiries of them. **See Beasley**, 761 A.2d at 624.

Here, the Commonwealth concedes that the arresting officer's stop of Henry's vehicle constituted an investigatory detention. **See** Commonwealth's Brief, at 7 n. 4. Thus, the arresting officer needed reasonable suspicion that a crime was being committed in order to lawfully stop Henry.

"[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." **Commonwealth v. Reppert**, 814 A.2d 1196, 1204 (Pa. Super. 2002) (*en banc*) (citation omitted). "Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate." **Id**. (internal quotation marks and citation omitted; brackets in original).

The arresting officer testified that as he drove by and looked into Henry's vehicle, he saw the "top half of a can" inside the center console of

the vehicle. N.T., Suppression Hearing, 5/29/15, at 11.[1] The can was colored red, white, and blue. *See id*., at 11-12. He thought it looked like a beer can. *See id*., at 12.

However, he admitted that he was not sure it was a beer can. *See id*., at 32. "It could have been a soda or a pop can as well." *Id*. The arresting officer could not determine whether the can was open. *See id*. He was also concerned that Henry's female passenger appeared to be under 21. *See id*. Furthermore, he stated that it would not have been a crime for Henry to have an unopened beer can in his vehicle. *See id*., at 31.

The arresting officer "had the thought process in [his] mind that [he] was going to make a further inquiry about [the can]." *Id*., at 29. However, he did not get out of his car to go ask Henry while Henry was still parked. *See id*. Instead, he pulled his patrol car into a position to stop Henry as he attempted to drive out of the parking lot. *See id*., at 12.

Under these circumstances, we cannot conclude that the arresting officer's testimony articulated specific observations that justified his action in initiating an investigative detention. The testimony establishes nothing more

---

[1] The transcript of the suppression hearing is included in the reproduced record, but is not in the certified record. This Court has, under certain circumstances, overlooked an omission of material from the certified record when it could be found in the reproduced record. *See*, *e.g.*, *Stewart v. Owens-Corning Fiberglas*, 806 A.2d 34, 37 n.3 (Pa. Super. 2002). *See also* Pa.R.A.P. 1921 *Note*. The Commonwealth has not disputed the authenticity of the transcript in the reproduced record, and we will therefore consider it in the disposition of this issue.

than that the officer had a hunch that there was a beer can in Henry's vehicle. He did not know if it was open. He had an opportunity to walk up to Henry's parked car to make further observations, which would have been legal, but instead waited until Henry started his vehicle and attempted to drive out of the parking lot. His stop of Henry's vehicle without reasonable suspicion was unlawful. Thus, we cannot conclude that the arresting officer's actions were objectively reasonable under the circumstances. The trial court erred in so concluding. We therefore reverse the suppression order.

Suppression order reversed. Judgment of sentence vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/2016